Luke Andrew Busby, Ltd.
Nevada State Bar No. 10319
216 East Liberty St.
Reno, NV 89501
775-453-0112
luke@lukeandrewbusbyltd.com
*Attorney for the Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| JAMES O'DOAN,<br><br>    Plaintiff(s),<br>  vs.<br><br>RENO POLICE OFFICER JOSHUA SANFORD, RENO POLICE OFFICER CADE LEAVITT, and THE CITY OF RENO, a political subdivision of the State of Nevada; and JOHN DOES I through X, inclusive<br><br>    Defendant(s).<br>_____/ | Case No.   3:17-cv-00293-LRH-VPC<br><br>JURY DEMAND<br><br>AMENDED COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF |

COMES NOW, JAMES O'DOAN, ("O'Doan" or "Plaintiff"), by and through the undersigned counsel, and files the following complaint seeking redress for the violation by RENO POLICE OFFICER JOSHUA SANFORD ("Sanford"), RENO POLICE OFFICER CADE LEAVITT ("Leavitt") of O'Doan's right to be free from excessive force and unlawful seizure in violation of the Fourth Amendment of the United States Constitution, and O'Doan's Fourteenth Amendment due process right to be free from the deliberate fabrication of evidence, and for various pendent state law claims.  O'Doan is also herein pursuing a cause of action herein against THE CITY OF RENO, a political subdivision of the State of Nevada ("City of Reno"), for violation of his rights pursuant to

1

the Americans with Disabilities Act (hereinafter "ADA").

## Jurisdiction

1. This action arises under 42 U.S.C. Section 1983 and 42 U.S.C. Section 12132.

2. This Court has jurisdiction of this action pursuant to 28 U.S.C. Sections 1331, 1343, 1367, 2201 and 42 U.S.C. Sections 1983 and 1988.

3. The Court has personal jurisdiction over the Defendant because the alleged incident described below occurred within this District.

## Venue

4. Venue is proper pursuant to 28 U.S.C. Section 1391 in the Northern District of Nevada because the acts giving rise to the Plaintiff's claims occurred in this District.

## Parties

5. O'Doan currently resides in Reno, Nevada. O'Doan has epilepsy, and as such is a qualified individual with a recognized disability under the ADA pursuant to 42 U.S.C. Section 12132.

6. Sanford is a Police Officer employed by the City of Reno. Sanford was at all times relevant herein acting under color of state law as described below. Sanford was acting within the scope of his employment with the City of Reno at the time of the incident complained of herein. Sanford is sued in his individual capacity.

7. Leavitt is a Police Officer employed by the City of Reno. Leavitt was at all times relevant herein acting under color of state law as described below. Leavitt was acting within the scope of his employment with the City of Reno at the time of the incident complained of herein. Leavitt is sued in his individual capacity.

8. Defendant City of Reno is a municipal corporation, duly organized and existing under the laws of the State of Nevada. Under its authority, the City of Reno operates the Reno Police Department ("RPD"). The City of Reno is a local government and is subject to the requirements of Title II the ADA under 42 U.S.C. Section 12131(1)(A).

## Statement of Facts

9. James O'Doan has a long and well documented history of suffering from epilepsy. Epilepsy is a neurological disorder marked by sudden recurrent episodes of sensory

disturbance, loss of consciousness, or convulsions, associated with abnormal electrical activity in the brain, commonly described as seizures.

10. At approximately 6:55 p.m. on July 15, 2016, Mr. O'Doan suffered a grand mal seizure while taking a shower at his home on Gentry Way in Reno, Nevada. A grand mal seizure features a loss of consciousness and violent muscle contractions.

11. Shortly thereafter, Ms. April O'Frea, who is Mr. O'Doan's girlfriend, called 911 and reported that Mr. O'Doan was having a bad seizure and reported that O'Doan had a propensity to wander the neighborhood in an incoherent state after suffering a seizure.

12. Ms. O'Frea also communicated to the 911 operator that O'Doan had been attacked before by the police after having a seizure, trying to impress upon the operator that O'Doan was suffering from a seizure and was not in his right mind.

13. The EMS advisory for the event in question clearly indicates that Ms. O'Frea was concerned that police, not understanding Mr. O'Doan's condition, would attack him as this had happened before when O'Doan suffered a seizure in 2012.

14. After suffering a seizure, Mr. O'Doan enters a "post ictal" state, which is a post seizure state of altered consciousness, under which Mr. O'Doan is completely confused and and is unaware of his actions.

15. After suffering the seizure on July 15, 2016, O'Doan, confused and disoriented in a post ictal state, walked out of his and Ms. O'Frea's home completely naked.

16. The EMS advisory for the incident indicates that Ms. O'Frea advised the 911 operator that O'Doan was having a seizure and that he was not in his right mind: "RP ADVD PATIENT HAS BEEN "ATTACKED" BY POLICE BEFORE BECAUSE HE DOESN'T LISTEN WHEN HE IS HAVING A SEIZURE AND IS NOT IN HIS RIGHT MIND" and "RP ADVD THAT THE SUBJ IS IN A GRAND MAL SEIZURE - ADVD LAST TIME OFCRS ATTACKED HIM DUE TO HIM BEING IN A SEIZURE."

17. Before encountering O'Doan, Sanford and Leavitt knew that O'Doan was an epileptic and that O'Doan had suffered a seizure. In other words, before encountering O'Doan, Sanford and Leavitt were advised of the situation they were approaching and knew that O'Doan was suffering from a medical condition and was not a suspect fleeing the scene

of a crime.

18. Despite this knowledge, upon approaching O'Doan, Sanford performed a "reverse reap" judo throw on O'Doan after O'Doan did not respond to Sanford's commands and attempted to run away from Sanford. Sanford's report from the incident states that judo throwing O'Doan, "...caused ODOAN's head to receive lacerations and swelling on it in a variety of places."

19. After O'Doan was restrained, O'Doan was sedated by REMSA personnel. Leavitt's report from the incident states, "ODOAN was restrained with REMSA's gurney restraints so ODOAN could receive the medical attention he needed and not harm them."

20. O'Doan was then transported by ambulance to Renown Regional Medical Center where he was treated by Emergency Room Dr. Daryl J. Di Rocco. Dr. Di Rocco's final impression was that O'Doan had a seizure.

21. Both Sanford and Leavitt were present at at Renown the time that O'Doan was being treated by Dr. Di Rocco.

22. O'Doan believes that both Sanford and Leavitt discussed O'Doan's diagnosis with Dr. Di Rocco and that Leavitt and Sanford were aware of O'Doan's diagnosis because O'Doan's discharge papers from Renown were provided to Sanford and Leavitt.

23. O'Doan was released by Renown on July 15, 2016 at approximately 9:41 p.m. into the custody of Sanford and Leavitt.

24. Instead of releasing O'Doan after Dr. Di Rocco's diagnosis, Leavitt charged O'Doan with indecent exposure and resisting a public officer.

25. O'Doan was then taken from Renown Regional Medical Center in a hospital gown, and was placed in a Reno Police paddy wagon along with other suspects.

26. O'Doan was driven around the city in a the paddy wagon for approximately an hour. O'Doan was finally booked at the Washoe County jail at 11:03 p.m. and spent the night in custody until he was released on bail at 9:30 am on July 16, 2016.

27. O'Doan was provided with his discharge papers from Renown while at the Washoe County Jail.

28. The Arrest Report and Declaration of Probable Cause, signed by Leavitt, also

4

indicated that Sanford also arrested O'Doan.

29. "Indecent exposure," codified in NRS 201.220 is a sex offence per NRS 179D.097. In *State v. Castaneda*, 126 Nev. 478, 483, 245 P.3d 550, 554 (2010), opinion modified on denial of reh'g, No. 52911, 2010 WL 5559401 (Nev. Dec. 22, 2010) the Court interpreted NRS 201.220 to mean that a person intentionally and publicly displayed their genitals by incorporation on the intentionality requirement included in NRS 193.050(3).

30. If O'Doan had been convicted of this offence, he would have had to register as a sex offender per NRS 179D.095 and NRS 179D.441.

31. Nowhere in any of the reports about the incident created by Sanford and Leavitt is it mentioned that O'Doan is an epileptic or that O'Doan suffered a seizure on the evening in question despite clear evidence that both Sanford and Leavitt knew that this is what happened to O'Doan.

32. The Plaintiff has suffered damages as a result of the blatant disregard for his basic Constitutional rights and violation of the ADA by the Defendants, including but not limited to physical injury and extreme emotional distress and anguish caused by O'Doan's arrest, confinement, and from being charged with an offence that, if convicted, would have required him to register as a sex offender - all as a result of suffering from a medical condition that is totally beyond his control.

## Causes of Action

### *Violation of the ADA 42. U.S.C. Section 12132*

**(Against the City of Reno)**

33. Plaintiff realleges and incorporates each and every allegation contained in the preceding paragraphs.

34. The City of Reno, in its capacity as official policy maker, failed to train, supervise, and/or discipline Sanford and Leavitt in recognizing symptoms of a disability under Title II of the ADA; from excluding qualified individuals such as O'Doan from participation in or denial of benefits of services provided by the City of Reno, or in otherwise discriminating against such qualified individuals with symptoms of disability recognized under title II of the ADA, resulting in the assault and battery and subsequent charging of

5

O'Doan by Sanford and Leavitt during the course of the subject-incident.

35. At the time Sanford and Leavitt responded to the call for help from Ms. O'Frea, they were aware that O'Doan was epileptic and had just had a seizure, and thus were aware of the symptoms and manifestations of O'Doan's recognized disability.

36. Sanford and Leavitt wrongly arrested O'Doan because they misperceived the effects of O'Doan's disability as criminal activity.

37. Title II of the ADA requires government agencies to take disability into account by making reasonable modifications of their policies and practices where needed. 42 U.S.C. Section 12132, 28 C.F.R. Section 35.130(b)(7) (2014).

38. Title II of the ADA applies to arrests. *Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014), rev'd in part, cert. dismissed in part sub nom. *City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 191 L. Ed. 2d 856 (2015).

39. The exclusion, denial of benefits, and/or discrimination against O'Doan was by reason of O'Doan's recognized disability, as a such, constitutes a violation of Title II of the ADA, which caused damages to O'Doan.

40. The City of Reno is vicariously liable for the violations of O'Doan's rights under the ADA committed by Sanford and Leavitt.

*Excessive Force in violation of the 4th and 14th Amendments, – 42 U.S.C. Section 1983*
**(Against Sanford)**

41. Plaintiff realleges and incorporates each and every allegation contained in the preceding paragraphs.

42. The use of force by Sanford against the Plaintiff was excessive, unlawful, and unreasonable, causing injury and physical pain and suffering to the Plaintiff.

43. By the actions described above, Sanford deprived Plaintiff of the following clearly established and well-settled constitutional rights:

   a. Freedom from the use of excessive and unreasonable force;

   b. Freedom from the deprivation of liberty without due process of law;

   c. Freedom from summary punishment.

44. Sanford subjected Plaintiff to these deprivations of his rights either maliciously,

or by acting with a reckless disregard for whether Plaintiff's rights would be violated by his actions.

45. As a direct and proximate result of the described unlawful and malicious conduct by Sanford, committed under color of law and under authority as a police officer, the Plaintiff suffered injury, severe physical pain and suffering and emotional distress. As a result, he was deprived of his right to be secure in her person against violations of his rights under the Fourth Amendment of the United States Constitution.

46. The acts of Sanford were intentional, wanton, malicious and oppressive and made with reckless indifference to the Plaintiff's rights thus entitling Plaintiff to an award of punitive damages.

***Unlawful Seizure in violation of the 4th Amendment - 42 U.S.C. Section 1983***

**(Against Sanford and Leavitt)**

47. Plaintiff repeats and realleges the allegations set forth in the foregoing Paragraphs as though fully set forth herein.

48. As a direct and proximate result of the unlawful seizure and the Plaintiff's arrest, the Plaintiffs suffered and continues to suffer severe mental anguish and emotional trauma in connection with the deprivation of the constitutional right guaranteed by the Fourth Amendment of the Constitution.

49. Under the totality of the facts and circumstances known to Sanford and Leavitt, a prudent person would not have concluded that there was a fair probability that O'Doan had committed a crime. *United States v. Struckman*, 603 F.3d 731, 739 (9th Cir.2010) and *United States v. Gonzales*, 749 F.2d 1329, 1337 (9th Cir.1984).

50. Sanford and Leavitt's seizure of O'Doan violated the Fourth Amendment because it was objectively unreasonable and without probable cause because Sanford and Leavitt knew that the Plaintiff was suffering from a medical condition that caused his behavior.

51. At the time of O'Doan's arrest, his right to be free from unreasonable seizure was a clearly established Constitutional right.

52. Sanford and Leavitt acted unreasonably and in reckless disregard for the truth

that O'Doan suffered from a medical condition and O'Doan's rights in wrongfully seeking and carrying out O'Doan's arrest.

53. As a result of the acts as described above, Sanford and Leavitt deprived Estes of his right to be free from unlawful seizure, in violation of the Fourth Amendment to the Constitution of the United States, causing damages to O'Doan.

54. The acts of sanford and Leavitt described above were dishonest, intentional, wanton, malicious, and oppressive, thus entitling Plaintiff to an award of punitive damages.

55. In addition to the relief requested above, the Plaintiff requests relief as described in the prayer for relief below.

*Violation of Due Process Under the 14th Amendment*

*42 U.S.C. Section 1983*

**(Against Sanford and Leavitt)**

56. Plaintiff repeats and realleges the allegations set forth in the foregoing Paragraphs as though fully set forth herein.

57. As a direct and proximate result of the unlawful seizure, and the Plaintiff's arrest, the Plaintiffs suffered and continues to suffer severe mental anguish and emotional trauma in connection with the deprivation of the constitutional right guaranteed by the Fourteenth Amendment of the Constitution.

58. Although Sanford and Leavitt knew that O'Doan had epilepsy and had suffered a seizure, Sanford and Leavitt charged O'Doan with crimes despite this clear exculpatory evidence, never mentioning in their reports that they knew that O'Doan had suffered a seizure.  See *Hale v. Fish*, 899 F.2d 390, 400 & n. 3 (5th Cir.1990) plaintiff proved constitutional violation by showing that affidavit supporting arrest warrant contained critical omissions that would have negated probable cause.

59. Sanford and Leavitt's seizure and arrest of O'Doan violated the Fourteenth Amendment because Sanford and Leavitt continued their investigation and arrest of O'Doan despite the fact that Sanford and Leavitt knew that the Plaintiff was innocent, and/or Sanford and Leavitt were deliberately indifferent to O'Doan's innocence, and the results of the investigation were used to criminally charge O'Doan. *Devereaux v. Abbey,* 263 F.3d 1070,

8

1076 (9th Cir.2001).

60. As a result of Sanford and Leavitt's acts as described above, Sanford and Leavitt deprived O'Doan of his clearly established right to due process, in violation of the Fourteenth Amendment to the Constitution of the United States, causing damages to O'Doan.

61. The acts of Sanford and Leavitt described above were dishonest, intentional, wanton, malicious, and oppressive, thus entitling Plaintiff to an award of punitive damages.

62. In addition to the relief requested above, the Plaintiff requests relief as described in the prayer for relief below.

### *Assault and Battery*
### **(Against Sanford)**

63. Plaintiff realleges and incorporates each and every allegation contained in the preceding paragraphs.

64. Sanford judo threw the Plaintiff on the ground against his will and without his permission whilst the Plaintiff was suffering from a serious medical condition.

65. The actions of Sanford caused physical injury to the Plaintiff.

66. As a direct and proximate result of the above described unlawful and malicious conduct by Sanford, committed under color of law, Plaintiff suffered injury, pain and suffering, and emotional distress.

67. The acts of Sanford as described above were intentional, wanton, malicious and oppressive and made with reckless indifference to Plaintiff's rights thus entitling Plaintiff to an award of punitive damages.

### *False Arrest*
### **(Against Sanford and Leavitt)**

68. Plaintiff repeats and realleges the allegations set forth in the foregoing Paragraphs as though fully set forth herein.

69. O'Doan was restrained of his liberty by Sanford and Leavitt under the probable imminence of force without legal cause or justification therefore.

70. O'Doan suffered damages as a result of being arrested by Sanford and Leavitt.

71. The acts of Sanford and Leavitt described above were dishonest, intentional, wanton, malicious, and oppressive, thus entitling Plaintiff to an award of punitive damages.

72. In addition to the relief requested above, the Plaintiff requests relief as described in the prayer for relief below.

*False Imprisonment*

**(Against Sanford and Leavitt)**

73. Plaintiff repeats and realleges the allegations set forth in the foregoing Paragraphs as though fully set forth herein.

74. Sanford and Leavitt's acts were intended to confine O'Doan within boundaries fixed by Sanford and Leavitt.

75. Sanford and Leavitt's acted directly or indirectly resulted in such a confinement of O'Doan

76. At all times relevant hereto, O'Doan was conscious of the confinement or was harmed by it.

77. O'Doan suffered damages as a result of being confined by Sanford and Leavitt.

78. The acts of Sanford and Leavitt described above were dishonest, intentional, wanton, malicious, and oppressive, thus entitling Plaintiff to an award of punitive damages.

79. In addition to the relief requested above, the Plaintiff requests relief as described in the prayer for relief below.

WHEREFORE, the Plaintiff requests that this Court:

a. Enter a declaratory judgment that the actions complained of herein are unlawful and violate the United States Constitution and Nevada law.

b. Order Defendant to pay the compensation denied or lost to Plaintiff to date by reason of Defendant's unlawful actions, in amounts to be proven at trial;

c. Order Defendant to pay compensatory damages for the Plaintiff's lost property and emotional pain and suffering, in an amount to be proven at trial;

d. Order Defendant to pay exemplary and punitive damages;

e. Order Defendant to pay attorneys' fees and costs of the action pursuant to 42 U.S.C. 1988 and 42 U.S.C. 12133.

f. Order Defendant to pay interest at the legal rate on such damages as appropriate; and

g. Grant any further relief that the Court deems just and proper.

Respectfully submitted this May 11, 2017.

By: _____
Luke Busby
Nevada State Bar No. 10319
216 East Liberty St.
Reno, NV 89501
775-453-0112
luke@lukeandrewbusbyltd.com
*Attorney for the Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 11, 2017, I electronically transmitted the foregoing pleading to document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel registered to receive Electronic Filings and/or I mailed the foregoing pleading to the address below by US Mail postage prepaid, and/or I hand delivered the foregoing to:

Reno City Attorney
Attn: Mark Hughs
1 East First St.
Reno, Nevada 89501
*Attorney for the Defendants*

By: _____/s/ Luke A. Busby_____
Luke Busby