Luke Andrew Busby, Ltd.
Nevada State Bar No. 10319
216 East Liberty St.
Reno, NV 89501
775-453-0112
luke@lukeandrewbusbyltd.com
*Attorney for the Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JAMES O'DOAN,<br><br>　　　　Plaintiff(s),<br><br>　vs.<br><br>RENO POLICE OFFICER JOSHUA SANFORD, RENO POLICE OFFICER CADE LEAVITT, and THE CITY OF RENO, a political subdivision of the State of Nevada; and JOHN DOES I through X, inclusive<br><br>　　　　Defendant(s).<br>_____/ | Case No.  3:17-cv-00293-LRH-VPC<br><br>**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**<br><br>**ORAL ARGUMENT REQUESTED** |

COMES NOW, JAMES O'DOAN, ("O'Doan" or "Plaintiff"), by and through the

undersigned counsel, and files the following Opposition to the Defendant's May 30, 2017

Motion to Dismiss ("Motion") filed by RENO POLICE OFFICER JOSHUA SANFORD

("Sanford"), RENO POLICE OFFICER CADE LEAVITT ("Leavitt"), and THE CITY OF

RENO ("City of Reno"), a political subdivision of the State of Nevada.

This Opposition  is made and based upon all of the pleadings and records on file for

this proceeding together with every exhibit that is mentioned herein or attached hereto (each

of which is incorporated by this reference as though it were set forth hereat in haec verba), if any there be, as well as the points and authorities set forth directly hereinafter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Standard of Review

1. The Defendant seeks dismissal for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6). To survive a motion to dismiss for failure to state a claim, O'Doan must satisfy the FRCP 8(a)(2) notice pleading standard. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). A complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. FRCP 8(a)(2). The 8(a)(2) pleading standard does not require detailed factual allegations, but a pleading that offers "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as true. *Id.* at 678. As explained below, on review of the facts presented in the Amended Complaint, all of which are included and incorporated by reference herein, it is clear that the Plaintiff has met his burden under FRCP 8(a)(2) by going beyond what is required by providing a relatively detailed account of the facts related to this case. *Id.*

### II. The Defendants Misinterpret and Spin the Facts in this Case

2. The Amended Complaint alleges generally that before encountering O'Doan, Sanford and Leavitt knew that O'Doan was an epileptic and that O'Doan had suffered a seizure. The Defendant's Motion states that that the various emergency responders listed on

2

the merged dispatch call history in Exhibit 5 to the Motion could not hear communications with other responders, as they operate on different frequencies, nor could they hear Ms. O'Frea.  However the Motion does not state exactly what portions of the contents of the emergency dispatch history Exhibit 5 Sanford and Leavitt did indeed hear or read before they arrived at the scene.   While the Defendant's seemingly dispute that Sanford and Leavitt knew they were being called for help because an epileptic had suffered a horrific seizure and was postictal, on page 6 line 1 of the Motion, the Defendants admit in pertinent part that, "From dispatch, Sanford and Leavitt had heard Plaintiff was epileptic…"

3.      The Amended Complaint alleges that the use of force by Sanford against the Plaintiff was excessive, unlawful, and unreasonable, causing injury and physical pain and suffering to the Plaintiff.   While Sanford's account of the incident in Exhibit 8 to the Motion states that O'Doan was nude and failed to obey commands, it does not indicate that O'Doan made any threatening statements or gestures towards Sanford.  Sanford's account also does not state that O'Doan was running away, but that, "ODOAN was walking Northbound on Kietzke lane fully nude and refused to obey Officers's commands of "stop Police" numerous times."  Officer Robles' account in Exhibit 9 to the Motion likewise contains no indication that O'Doan threatened the officers.  Only Officer Leavitt's account in Exhibit 7 to the Motion and Leavitt's Probable Cause Declaration in Exhibit 10 to the Motion is it indicated that, "O'Doan stopped and turned toward me with his fist clinched and presenting body language as if he was going to attack myself and Officer Sanford."  Leavitt, unlike Sanford, then describes O'Doan's running away, "ODOAN then turned away from Officers and

started to flee by running North on the sidewalk." There is no indication or evidence anywhere that O'Doan leveled verbal threats at the officers, that he was armed, or that he made any attempt to physically attack Sanford and Leavitt. Given O'Doan's postictal condition, and the vague description from Officer Leavitt of O'Doan's "body language," and the inconsistent accounts of the incident provided by the Defendants, many genuine issues of material fact exist as to whether the level of force used by Sanford on O'Doan, i.e. judo throwing O'Doan on his head, was excessive.

4.     The Amended Complaint alleges generally that the whole incident at issue occurred because O'Doan has epilepsy and suffered a seizure. The Defendants allege that O'Doan was engaging in behavior, "unusual in their experience for someone who is suffering, or just concluded, a seizure" (Motion at page 7 line 5) and that "His behavior was more consistent with drug use." (Motion at page 7 line 6). The Defendants do not describe what behaviour they believe would be "usual" for a person that has epilepsy and just suffered a seizure, their knowledge and experience with epileptics, nor what education or training they received regarding how to deal with post-seizure epileptics in the course of their police work. Further, there is no indication in the Motion of whose testimony the assertions of fact quoted in this paragraph above are supposed to reflect. The statements cited above, if they originate from Sanford and Leavitt, essentially constitute an admission that Sanford and Leavitt were deliberately indifferent to the fact that O'Doan's behavior was caused by his having epilepsy even though that is the entire reason they were called.

5.     The Amended Complaint alleges that after O'Doan was restrained, he was

sedated by REMSA personnel.  Leavitt's Declaration in Exhibit 10 states, "ODOAN was

restrained with REMSA's gurney restraints so ODOAN could receive the medical attention

he needed and not harm them."  Also, Sanford's report from the incident in Exhibit 8 states,

"Officer's contacted REMSA personnel who transported ODOAN to Renown Medical

Center for further evaluation."  This raises the obvious question, why did Leavitt believe that

O'Doan received, "the medical attention he needed"?  Why did Sanford believe that O'Doan

needed evaluation at Renown?  Although the Defendants allege that they were not privy to

the entire 911 call made by Ms. O'Frea, the other first responders listed in Exhibit 5, the

Reno Fire Department and REMSA, heard and/or participated in the call and were clearly on

the scene.[1]  It strains credulity to believe that neither Sanford nor Leavitt would have

discussed with the Reno Firefighters on scene or the REMSA personnel on scene why

O'Doan was walking down a major street in Reno completely naked in a confused state. It

also strains credulity to believe that Sanford and Leavitt were aware that O'Doan needed

medical attention and further evaluation but that they had no idea what for, even after they

admit to hearing that O'Doan had epilepsy.

      6.     The Defendants argue that the Plaintiff's allegation that he believes Sanford and

Leavitt discussed Plaintiff's diagnosis with the doctor, despite (1) the existence of HIPAA

laws and (2) the doctor's willingness to release Plaintiff to be jailed, does not reach the level

of plausibility.  (Motion at page 7 line 17).   First, HIPAA laws do not necessarily prohibit a

---

[1] O'Doan has been unable to obtain interviews and statements from many of the witnesses to what occurred, including REMSA and Reno Fire Department employees who are identified as witnesses in the reports for the case.  O'Doan should be permitted to depose these witnesses, as well as other witnesses to the events that are the subject of the dispute in this case.

doctor from discussing with law enforcement a diagnosis of a person who is in custody.  See

45 C.F.R. § 164.512(k)(5).  Secondly, the facts and circumstances surrounding why Dr.

DiRocco released O'Doan, and what exactly Dr. Di Rocco said to Sanford and Leavitt are

unknown to O'Doan.  O'Doan should be able to depose Dr. Di Rocco to determine exactly

what happened at Renown. Nevertheless, the Defendants do not seem to dispute that

DiRocco diagnosed O'Doan with having had a seizure on the night in question.  But,

importantly, the Defendants also do not categorically state that Sanford and Leavitt did not

know that the Plaintiff has epilepsy and that the Plaintiff had suffered a seizure on the night

in question, nor do they directly dispute that Sanford and Leavitt were present while O'Doan

was being treated by Dr. Di Rocco at Renown.  What the Plaintiff alleges is that Sanford and

Leavitt were present at Renown at the time O'Doan was being treated by the attending ER

Doctor and that O'Doan's discharge papers were provided to Sanford and Leavitt when

O'Doan was released.  These discharge papers very clearly indicate on the first page that Dr.

Di Rocco diagnosed O'Doan with having suffered a seizure.  (Exhibit 1)  Accepting these

facts as true, and the reasonable inference from these facts that Sanford and Leavitt were

aware that O'Doan had suffered a seizure on the night in question, a genuine issue of

material fact exists as to whether Sanford and Lavitt knew that O'Doan's behavior on the

night in question was caused by his epilepsy and was therefore not criminal in nature.

///

///

///

**III. Qualified Immunity and 42 USC Section 1983**

7.     The Defendant's Motion recites a general qualified immunity standard at page 5 line 18, but then makes a specific qualified immunity argument in only one section of the Motion, in defense of Sanford's use of excessive force against O'Doan at page 10 line 9.   No specific qualified immunity argument is made in the Motion for O'Doan's claims made against Leavitt or the City of Reno.

8.     Government officials performing discretionary functions are entitled to qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).  A qualified immunity analysis starts with the threshold question of whether, based upon the facts taken in the light most favorable to the party asserting the injury, did the conduct violate a Constitutional right.  If, however, a Constitutional violation occurred, the second inquiry is whether the officer could nevertheless have reasonably but mistakenly believed that his or her conduct did not violate a clearly established Constitutional right.  *Jackson v. City of Bremerton*, 268 F.3d 646, 651  (9th Cir. Wash. 2001).  A clearly established right is one that is sufficiently clear that a reasonable official would have understood that the conduct in question violates that right.  *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015).   Acts that violate the Constitution are not and cannot be discretionary.  *Shafer v. City of Boulder*, 896 F. Supp. 2d 915, 939 (D. Nev. 2012) (citing *Jarvis v. City of Mesquite Police Dept.*, No. 09-CV-00851, 2012 U.S. Dist. LEXIS 22800, 2012 WL 600804, at 5 (D. Nev. Feb. 23, 2012) (citing *Nurse v. United States*, 226 F.3d 996, 1002 (9th

Cir.2000)).

9.      To prevail on a claim under 42 USC Section 1983, O'Doan must prove that (1) the conduct complained of was committed by a person acting under the color of state law; and (2) the conduct deprived him of a federal constitutional or statutory right.  *Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989).   Here, it is undisputed that Sanford and Leavitt were acting under color of Nevada law as police officers for the City of Reno.  For his civil rights claims, O'Doan relies on well established substantive rights conferred by the Fourth and Fourteenth Amendments, and thus states a claim under Section 1983.

**IV. The Defendant's Arguments**

10.      The Defendants offer the following grounds for dismissal of this matter in their Motion: (1) That because Sanford and Leavitt received dispatch reports (relayed from an unknown third party) that Plaintiff was an epileptic, the Plaintiff's argue that they should ignore the dangers and actual circumstances they encountered (Motion at page 6 line 4); (2) Plaintiff's ADA claim against the City fails to allege a cognizable cause of action (Motion at 7 line 23); (3) Sanford's use of force was objectively reasonable (Motion at 9 line 1); (4) Sanford and Levitt had probable cause to arrest O'Doan (Motion at page 10 line 13); (5) That the allegations in the Complaint do not support a violation of Due Process claim (Motion at 11 line 7); (6) that because Sanford and Leavitt's  actions were "proper and justified," the Plaintiff does not state a cognizable assault and battery claim (Motion at page 12 line 11); and (7) because there was "legal cause and justification" for O'Doan's arrest, O'Doan's False Arrest and False Imprisonment claims must be dismissed (Motion at 12 line 21).  O'Doan

will respond to each of these arguments in turn below.

**a. Title II of the ADA requires that disability must be considered**

11.     The Defendants argue that because Sanford and Leavitt received dispatch reports (relayed from an unknown third party) that Plaintiff was an epileptic, the Plaintiff's argue that they should ignore the dangers and actual circumstances they encountered (Motion at page 6 line 4). This argument is a blatant straw man, i.e. a misrepresented version of O'Doan's argument that is set up because it is easier to defeat than an O'Doan's actual argument. Nowhere in O'Doan's Amended Complaint does O'Doan argue that Sanford and Leavitt should, "ignore the dangers and actual circumstances they encountered." The whole question is whether, knowing that Sanford and Leavitt were encountering an epileptic who had just suffered a seizure, Sanford acted in accordance with the requirements of the ADA, the Constitution, and Nevada law when Sanford judo threw O'Doan on his head and whether Sanford and Leavitt acted in accordance with the ADA, the Constitution, and Nevada law when they arrested and charged O'Doan after O'Doan was diagnosed at the ER with having just had a seizure. The allegations in the Amended Complaint taken a a whole show that Sanford and Leavitt were purposefully and deliberately indifferent to the fact that O'Doan has epilepsy.

12.     The Defendants also argue that the Plaintiff's ADA claim is nothing more than a collection of conclusory statements, devoid of factual content, intended to raise the possibility of a cognizable claim, merely because Plaintiff was arrested. (Motion at 8 line 20). This argument is a another straw man that ignores the extensive and specific allegations of

fact in the Amended Complaint.   As alleged in the Amended Complaint, O'Doan has

epilepsy, and as such is a qualified individual with a recognized disability under the ADA

pursuant to 42 U.S.C. Section 12132.  The City of Reno is a local government and is subject

to the requirements of Title II the ADA under 42 U.S.C. Section 12131(1)(A) and is

vicariously liable for the acts of Sanford and Leavitt that violate the ADA.  Title II of the

ADA requires government agencies to take disability into account by making reasonable

modifications of their policies and practices where needed. 42 U.S.C. Section 12132, 28

C.F.R. Section  35.130(b)(7) (2014).  O'Doan does not bring suit solely, "because he was

arrested," but because O'Doan's arrest was so egregiously outside of the bounds of what is

lawful and acceptable behavior by the police under the ADA, the Constitution, and Nevada

law.

13.     Epileptics have long faced wrongful discrimination and stigma based on

misperceptions and ignorance about the disease.[2] Historically, the cause of epilepsy has been

attributed to revenge of aggrieved ancestors, witchcraft, ghosts, and visitation by the devil.[3]

Under the findings section of the ADA, it states:

> Individuals with disabilities continually encounter various forms
> of discrimination, including outright intentional exclusion, the
> discriminatory effects of architectural, transportation, and
> communication barriers, overprotective rules and policies,
> failure to make modifications to existing facilities and practices,
> exclusionary qualification standards and criteria, segregation,
> and relegation to lesser services, programs, activities, benefits,
> jobs, or other opportunities;
> 42 U.S.C.A. § 12101(a)(5) (West)

[2] de Boer, HM (Dec 2010). "Epilepsy stigma: moving from a global problem to global solutions.". Seizure : the journal of the British Epilepsy Association. 19 (10): 630–6. doi:10.1016/j.seizure.2010.10.017. PMID 21075013
[3] Epilepsy: A Comprehensive Textbook (3-volume set)Oct 6, 2007 by Jerome Engel Jr and Timothy A. Pedley MD

And that the purpose of the ADA is to:

> to provide clear, strong, consistent, enforceable standards
> addressing discrimination against individuals with disabilities. 42
> U.S.C.A. § 12101(b)(2) (West)

14.     Title II of the ADA was specifically designed to protect qualified individuals

such as O'Doan from such unlawful discrimination on the basis of disability in services,

programs, and activities provided by State and local government entities, such as The City of

Reno.

15.     As alleged in the Amended Complaint, after suffering a seizure, O'Doan enters

a postictal state, which is a post seizure state of altered consciousness, under which Mr.

O'Doan is confused and and is unaware of his actions.  According to a Case Report

published in the medical journal Epilepsy & Behavior Case Reports

Volume 1, 2013, Pages 71-73, *Acute postictal confusion and violence: Two Cases with unfortunate*

*outcomes*, available at http://www.sciencedirect.com/science/article/pii/S2213323213000224,

a postictal state may have the following charecteristics:

> In temporal lobe epilepsy (TLE), the postictal state is typically
> characterized by confusion and disorientation. Perhaps as a
> result of these feelings, patients are also often fearful and
> agitated and may forcefully resist being restrained [1,2]. As
> opposed to such reactive violence, spontaneous postictal
> violence is rare, though well described [2–5].

16.     The Plaintiff's claim under the ADA is that the City of Reno "failed to train,

supervise, and/or discipline Sanford and Leavitt in recognizing symptoms of a disability

under Title II of the ADA" (Amended Complaint at page 5 line 24).  Officer Sanford, not

being trained to recognize the signs of a postictal state, used excessive force on a confused

and disoriented post seizure epileptic, and then Sanford and Leavitt charged O'Doan, rather than taking O'Doan's disability into account by making reasonable modifications of their policies and practices where needed, i.e. by not arresting disabled persons for being disabled. Sanford and Leavitt's actions are the logical equivalent of shooting a quadriplegic for failing to raise his hands in response to a command to do so.  O'Doan has plead sufficient facts to show that Sanford and Leavitt and now the City of Reno, refused, and apparently refuse still (based on their arguments in the Motion) to take the fact that O'Doan was an epileptic who suffered a horrific seizure on the night of the incident in question into account, as Title II of the ADA requires.

**b. O'Doan states a valid claim under the ADA**

17.     Title II of the ADA applies to arrests.  *Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014), rev'd in part, cert. dismissed in part sub nom. *City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 191 L. Ed. 2d 856 (2015).  The Defendants argue that the Plaintiff's ADA claim against the City fails to allege a cognizable cause of action (Motion at 7 line 23).  The Motion never actually makes the categorical claim that the ADA does not apply to arrests.   Nevertheless, the Defendants argue, citing the *Sheehan* decision that, "However, that case was reversed in part, with certiorari dismissed as to the ADA matter at issue."

18.     The *Sheehan* case involved a mentally ill resident at a group home in San Francisco, who after acting erratically and threatening to kill her social worker, was shot by police after she grabbed a knife and threatened to kill officers.  *Id.* at  1767.  After the District

Court granted summary judgment on Sheehan's ADA claims, the 9th Circuit reversed, finding that the ADA covers public services, programs, or activities, and that the ADA's accommodation requirement should be read to to encompass anything a public entity does. Id. at 1172.  The Supreme Court granted certiorari on the question, but because the City of San Francisco changed its argument and conceded that the ADA applied to arrests in its brief before the Supreme Court, the Supreme Court declined to exercise its discretion to decide the issue and dismissed that question  Id. at 1773-1774.  Thus, the 9th Circuit's underlying ruling on the issue cited above in *Sheehan* is dispositive here.  That is, in the 9th Circuit, Title II of the ADA applies to arrests, and as such, it applies to the arrest of O'Doan by Sanford and Leavitt.

**c. Judo throwing a postictal epileptic on his head constitutes an excessive use of force in violation of the 4th Amendment**

19.     The Defendants argue that Sanford's use of force was objectively reasonable (Motion at 9 line 1).  All claims of excessive force, whether deadly or not, should be analyzed under the objective reasonableness standard of the Fourth Amendment set forth in *Graham v. Connor*, 490 U.S. 386, 397 (1989).

20.     In *Graham v. Connor*, Dethorne Graham, a diabetic suffering from an insulin reaction, was subjected to excessive force by officers who did not believe that he was a diabetic and misinterpreted his actions as drunkenness. *Id.* at 389.  O'Doan's case is similar to Mr. Graham's case in that both O'Doan and Graham were suffering from medical conditions at the time of the use of excessive force by the police.  As described in the Motion, Sanford

and Leavitt apparently believed O'Doan's behavior was more consistent with drug use even though they acknowledge they were told O'Doan was epileptic. (Motion at page 7 line 6).  As in *Graham*, Sanford chose to disregard what he was told was happening and to treat O'Doan as if he were a fleeing felon.  The tone of the Motion sustains this total disregard for O'Doan's medical condition and the actual situation that Sanford encountered, implying that O'Doan deserved such treatment and is lucky that Sanford did not shoot O'Doan on the spot,  "Then Sanford took him down by hand (not with any of the more harmful weapons available to him)." (Motion at page 4 line 8).  The Motion minimizes what Sanford actually did to O'Doan by describing taking O'Doan down by hand, and does not use the actual language describing what Sanford did in Sanford's own report: "I performed a reverse reap throw on ODOAN which was successful in taking him to the ground.  This caused ODOAN's head to receive lacerations and swelling on it in a variety of places." (Exhibit 8 to the Motion).  Pictures of O'Doan after the incident, which speak for themselves, are attached hereto as Exhibit 1.

21.     A naked person in a confused state suffering a medical condition failing to immediately obey the commands or respond to a police officer, does not justify a police officer using force sufficient to terminate the life of a human being, which is a possible result from being thrown head first into pavement or concrete while in a confused and disoriented state.  As described above, a postictal state is typically characterized by confusion and disorientation and patients are also often fearful and agitated and may forcefully resist being restrained.  There is no indication in the reports of Sanford and Leavitt that they tried to

deescalate the situation by speaking O'Doan or to use a lesser degree of physical force.

22.     Determining whether the force used by Sanford to arrest O'Doan was reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on O'Doan's Fourth Amendment interests against the countervailing governmental interests at stake in arresting O'Doan.  The nature of the crime or other circumstances known to the officer at the time force as applied should be modified as appropriate when the officers are acting under their community caretaking function rather than to counter crime.  In such circumstances, the 9th Circuit held that the better analytical approach focuses the inquiry on the seriousness of the situation that gives rise to the community caretaking function. *Ames v. King Cnty.*, 846 F.3d 340, 349 (9th Cir. 2017).  As indicated in the 911 calls attached to the Motion, Ms. O'Frea was clearly calling for help because O'Doan was suffering from a medical episode and desperately needed medical treatment.  There is no denying from the tone of the 911 calls attached to the Motion that Ms. O'Frea was desperate for help, but it is also clear that she was terrified that officers would misinterpret O'Doan's behavior and attack him. (See Exhibit 5 to the Motion)  But O'Doan was not engaging any a criminal act requiring such aggressive tactics as were used by Sanford.   The police were called to the scene as part of their community caretaking function, because O'Doan has a disease and needed help, not as a result of a reported crime.

23.     Given that at this stage of the proceedings (on a FRCP 12(b)(6) Motion) the Court is required to accept that O'Doan's version of events is true, dismissal of this matter is not warranted, as per FRCP 8(a)(2), O'Doan has very clearly stated a claim upon which relief

may be granted on his excessive force claim as a reasonable juror could conclude that head first judo throwing an epileptic under the circumstances faced by Sanford was excessive and objectively unreasonable.  The Ninth Circuit has repeatedly recognized that excessive force cases are rarely suited for even summary judgment, much less dismissal, because an the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom.  *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002); see also *Liston v. County of Riverside*, 120 F.3d 965, 976 n. 10 (9th Cir. 1997) (as amended) ("We have held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury.")

24.     O'Doan's right to be free from excessive force was well established at the time of his arrest. *Tennessee v. Garner*, 471 U.S. 1, 712 (1985).

**d. Sanford and Leavitt lacked probable cause - no reasonable officer would have arrested O'Doan**

25.     The Defendants argue that Sanford and Levitt had probable cause to arrest O'Doan (Motion at page 10 line 13) Under the totality of the facts and circumstances known to Sanford and Leavitt, a prudent person would not have concluded that there was a fair probability that O'Doan had committed a crime. *United States v. Struckman*, 603 F.3d 731, 739 (9th Cir.2010) and *United States v. Gonzales*, 749 F.2d 1329, 1337 (9th Cir.1984).  An arresting officer's state of mind, except for the facts that the officer knows, is irrelevant to the existence of probable cause. *Devenpeck v. Alford*, 543 U.S. 146, 15253 (2004).  As alleged in the Amended Complaint, the central and critical fact that Sanford and Leavitt knew in this

case, from the time that they were called to the scene to the time that they booked O'Doan into County jail, was that O'Doan was an epileptic and that he had suffered a seizure.  In the Motion, Sanford and Leavitt never dispute that they had knowledge of this central and critical fact, as such, Sanford and Leavitt's state of mind is relevant to the inquiry of the reasonableness of their arresting O'Doan.  The fact that Sanford and Leavitt inexplicably chose to omit this central fact from any mention whatsoever in their arrest and probable cause reports from the incident is also left completely unexplained in the Motion.

26.     The Defendants argue that Reno Justice Court found probable cause for the charge existed. (Motion at page 4 line 16).  What the Defendants do not state is that this finding by the Reno Justice Court was based solely on a review of Leavitt's Probable Cause Declaration in Exhibit 10 to the Motion, which makes no mention of O'Doan's epilepsy, the fact that O'Doan had suffered a seizure, only that "O'DOAN was transported to RENOWN medical center by REMSA personnel and evaluated for his injuries and other possible health issues."  It is no mystery that the Reno Justice Court found probable cause when it was not apprised of the central fact in the case by Sanford and Leavitt.

27.     At the time of O'Doan's arrest, his right to be free from unreasonable seizure was a well established Constitutional right. *Illinois v. Gates*, 462 U.S. 213 (1983).

**e. The allegations in the Amended Complaint meet the elements of a due process violation claim**

28.     The Defendants argue that the allegations in the Complaint do not support a violation of Due Process claim (Motion at 11 line 7).  By the Defendants' own admission

cited above, Sanford and Leavitt knew that O'Doan had epilepsy before they had even arrived at the scene of the incident.  Despite this, Sanford and Leavitt charged O'Doan with crimes despite the clear exculpatory evidence that O'Doan had a seizure, never mentioning in their reports that they knew that O'Doan was epileptic or that he had suffered a seizure. Sanford and Leavitt were deliberately indifferent and showed reckless disregard for O'Doan's rights or for the truth.  *Gantt v. City of L.A.*, 717 F.3d 702, 708 (9th Cir.2013); *Tennison v. City and Cnty.* of S.F., 570 F.3d 1078, 1089 (9th Cir.2009).

29.     In *Hale v. Fish*, 899 F.2d 390, 400 & n. 3 (5th Cir.1990) a plaintiff proved constitutional violation by showing that affidavit supporting arrest warrant contained critical omissions that would have negated probable cause.  Similarly, Sanford and Leavitt chose to leave out of their reports the fact that the very reason they were called to Gentry Way on July 15, 2016 was because O'Doan has epilepsy and had suffered a seizure, which negates probable cause for his arrest.

30.     At the time of O'Doan's arrest, his right to Due Process not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government was a clearly established Constitutional right.  *Devereaux v. Abbey*, 263 F.3d 1070, 1075 (9th Cir. 2001) citing *Pyle v. Kansas*, 317 U.S. 213, 216, 63 S.Ct. 177, 87 L.Ed. 214 (1942).

31.     Because O'Doan plead facts showing that Sanford and Leavitt's seizure and arrest of O'Doan violated the Fourteenth Amendment because Sanford and Leavitt continued their investigation and arrest of O'Doan despite the fact that Sanford and Leavitt knew that the Plaintiff was innocent, and/or Sanford and Leavitt were deliberately indifferent

to O'Doan's innocence, and the results of the investigation were used to criminally charge O'Doan, O'Doan had plead a sufficient claim for violation of his due process rights under *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir.2001).

**f. The Plaintiff's assault and battery claim against Sanford is cognizable**

32.    The Defendants argue that because Sanford and Leavitt's  actions were "proper and justified," the Plaintiff does not state a cognizable assault and battery claim (Motion at page 12 line 11).  Police officers are allowed to use an amount of force that reasonably appears necessary, and are liable for battery only to the extent that they use more force than is reasonably necessary. *Ramirez v. City of Reno,* 925 F. Supp. 681, 691 (D. Nev. 1996) (discussing Nevada law.  The analysis of O'Doan's battery claim largely overlaps the analysis of whether the amount of force Sanford used was reasonable under the Fourth Amendment, which is argued at length above.  See, e.g., *Vasquez-Brenes v. Las Vegas Metro. Police Dep't*, 51 F. Supp. 3d 999, 1014 (D. Nev. 2014) ("[T]he standard for battery by a police officer under Nevada law is the same as under a 42 USC Section 1983 claim.").

**g. There was no "legal cause or justification" for arresting O'Doan**

33.    The Defendants argue that because there was "legal cause and justification" for O'Doan's arrest, O'Doan's False Arrest and False Imprisonment claims must be dismissed (Motion at 12 line 21).   The 9th Circuit has held that an Officer is not entitled to immunity from state law claims where a reasonable juror could find that the officer's conduct constituted a deliberate and willful disregard for the law.  *Davis v. City of Las Vegas*, 478 F.3d 1048, 2007 U.S. App. LEXIS 4580 (9th Cir. Nev. 2007).

34.     In *State v. Castaneda* , 126 Nev. 478, 483, 245 P.3d 550, 554 (2010), opinion modified on denial of reh'g, No. 52911, 2010 WL 5559401 (Nev. Dec. 22, 2010) the Court interpreted NRS 201.220, the offence with which O'Doan was charged, to mean that a person intentionally and publicly displayed their genitals by incorporation on the intentionality requirement included in NRS 193.050(3).  Further, the allegation that O'Doan resisted arrest also contains an intentionality requirement.  Courts have long held that crimes that involve "willful" conduct, including offenses that involve resisting arrest, require a showing of mens rea.  According the analysis of the *United States v. Bibbins*, 637 F.3d 1087, 1091 (9th Cir. Nev. 2011) Court, this includes crimes under which "resisting" is an element.

35.     The Plaintiff has alleged that Sanford and Leavitt arrested O'Doan despite the fact that they knew that he was an epileptic and had just suffered a seizure.  Because of this fact, Sanford and Leavitt knew that the Plaintiff's conduct was not intentional, much less criminal.  In light of this clear exculpatory evidence, there was no legal cause of justification for O'Doan's arrest, as argued by the Defendants.  As such, O'Doan had stated a valid claim for False Arrest and False Imprisonment.

WHEREFORE, the Plaintiff respectfully requests that the Motion be denied.

Respectfully submitted this June 9, 2017.

By: _____
Luke Busby
Nevada State Bar No. 10319
216 East Liberty St.
Reno, NV 89501
775-453-0112
luke@lukeandrewbusbyltd.com
*Attorney for the Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 9, 2017, I electronically transmitted the foregoing pleading to document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel registered to receive Electronic Filings and/or I mailed the foregoing pleading to the address below by US Mail postage prepaid, and/or I hand delivered the foregoing to:

Reno City Attorney
Attn: Mark Hughs
1 East First St.
Reno, Nevada 89501
*Attorney for the Defendants*


By: _____
Luke Busby

Exhibit List

1. Discharge papers

2. Photos of O'Doan after the incident