KARL HALL
Reno City Attorney
MARK HUGHS
Nevada Bar #5375
Post Office Box 1900
Reno, NV 89505
(775) 334-2050
*Attorneys for City of Reno,*
*Officer Joshua Sanford, and*
*Officer Cade Leavitt*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

JAMES O'DOAN,

        Plaintiff,
vs.

RENO POLICE OFFICER JOSHUA SANFORD, RENO POLICE OFFICER CADE LEAVITT, and THE CITY OF RENO, a political subdivision of the State of Nevada; and JOHN DOES I through X, inclusive.

        Defendants.

Case No.: 3:17-CV-00293-LRH-VPC

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants City of Reno ("City"), Joshua Sanford ("Sanford") and Cade Leavitt ("Leavitt"), collectively referred to as "Defendants", by and through their attorneys, Karl Hall, Reno City Attorney, and Mark Hughs, Deputy Reno City Attorney, reply in support of their Motion to Dismiss (ECF #10). This Reply is based on Fed. R. Civ. P. 12(b)(6), the attached Memorandum of Points and Authorities, the record before the Court and any additional arguments or submissions the Court deems just and proper.

## MEMORANDUM OF POINTS AND AUTHORITIES

The Motion to Dismiss (ECF #10) challenges the sufficiency and plausibility of the allegations in Plaintiff's Complaint (ECF #1). A complaint which does not allege sufficient facts to support a plausible legal theory is subject to dismissal. *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009). To be plausible, there must be factual allegations which "allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  The plausibility threshold "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.  When "the allegations give rise to an obvious alternative explanation, then the complaint may stop short of the line between possibility and plausibility of entitlement to relief." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)(internal citations omitted).  "Making the plausibility determination is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*., (internal citations omitted).

Plaintiff's claims are not plausible when examined through the lens of common sense.  Plaintiff's lawsuit is entirely premised on allegations that Sanford and Leavitt knew Plaintiff had epilepsy, which was "the entire reason they were called" (ECF #16, p.4:25-26), and that they should have not have used force or arrested him.  However, as the Motion to Dismiss demonstrates, the Reno Police were dispatched on reports that Plaintiff was uncooperative and violent.[1]  Plaintiff's girlfriend called for medical help, and her call was transferred to REMSA.  (ECF #10, Exhibit 1).  Through a series of reports from REMSA, Plaintiff's girlfriend and the Reno Fire Department, the dispatcher learned that Plaintiff was uncooperative, violent, trying to break out windows and hurting himself.  Moreover, Plaintiff's girlfriend did not respond when asked if she was safe.  (ECF #10, Exhibit 4).  It was at that point the Reno Police were dispatched.  (ECF #10, Exhibit 5).  They were later told to respond "code 3" (emergency lights and siren) when Plaintiff's girlfriend indicated he had torn up the house.  (ECF #10, Exhibits 5 and 6).

Plaintiff argues that differences in the police reports (ECF #10, Exhibits 7, 8 and 9) demonstrate that Plaintiff did not threaten the officers.  (ECF #16, p.3:14-28).  However, such an argument mischaracterizes the reports.  Leavitt reported Plaintiff turned toward him with fists clenched and a threatening posture.  (ECF #10, Exhibit 7).  As noted in its top right corner, Leavitt's report is the "original" report of the incident.  *Id*.  Sanford's report is a supplement to

---

[1] The extrinsic materials referenced in, and materials made exhibits to, Plaintiff's Opposition (ECF #16) are not judicially noticeable and should not be considered by the Court.  Defendants object to their consideration.

the original, focusing on his actions. (ECF #10, Exhibit 8, top right corner). Robles' report is another supplement, which clearly indicates he arrived after Plaintiff was physically engaged, so he was not present to witness the precursor threatening behavior. (ECF #10, Exhibit 9). Moreover, Plaintiff's attempt to relate references to medical attention in the officer's reports solely to Plaintiff's alleged epileptic condition ignores the clear references to injuries caused by Plaintiff's resistance to arrest and "hurting himself" reported by his girlfriend. (ECF #10, Exhibits 1, 4, 7 and 8).

### 1. Plaintiff Fails to Demonstrate his ADA Claim is Plausible.

Plaintiff's ADA claim is based on the allegation that arresting him constitutes a violation of the ADA. The ADA does not prohibit arresting persons with disabilities, when the arrest is objectively reasonable. *Bates ex rel. Johns v. Chesterfield County Va.*, 216 F.3d 367 (4th Cir. 2000); Sheehan *v. City of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014). As noted, medical responders were dispatched based on a 911 call concerning an epileptic episode. The police were later called because of other issues, violence and non-cooperation. Based upon the reliable information available to them, the officer's arresting and charging Plaintiff was objectively reasonable. The Complaint does not contain any factual allegations identifying "[t]he exclusion, denial of benefits and/or discrimination against O'Doan was by reason of O'Doan's recognized disability." (ECF #1, ¶39, emphasis added). Thus, Plaintiff's ADA claim is neither plausible nor cognizable.

### 2. Plaintiff's Arguments Against Dismissal of His §1983 Claims Only Highlight the Legal Deficiencies of His Claims.

Plaintiff's arguments in support of his §1983 claims are disjointed, confused and non-specific, following neither the sequence of the Complaint or the Motion to Dismiss. He first argues, "[n]o specific qualified immunity argument is made in the Motion for O'Doan's claims made against Leavitt or the City of Reno." (ECF #16,, p.7:6-8). However arguments demonstrating the deficiency of the unlawful seizure and due process claims against Leavitt (and Sanford) are clearly set forth on pages 10-12 of the Motion to Dismiss. Moreover, as qualified

immunity only applies to individuals, no such argument would be made on behalf of the City of Reno.[2]

### a. Use of Force.

With regard to his use of force claim, Plaintiff argues the police reports do not indicate Sanford and Leavitt tried to use a lesser degree of force. (ECF #16, p.14:27-p.15:1). However, Leavitt's report specifically says he tried to use his Taser (ECF #10-7), and Sanford avoided weapons altogether, using only his hands. The fact that an efficient take-down technique was used is certainly objectively reasonable under the circumstances, and preferable to an approach (Plaintiff does not specify what approach), which may have led to a prolonged struggle near a busy roadway. Moreover, even in the "community caretaking capacity" cited by Plaintiff in reference to *Ames v. King County, Washington*, 646 F.3d 340 (9th Cir. 2017), the same *Graham v. Connor*, 490 U.S. 386 (1989) factors apply. *Ames*, at 348-349. Plaintiff ignores the fact that reasonableness of the use of force is determined, "'from the perspective of a reasonable officer on the scene' and not 'with the 20/20 vision of hindsight'." *Id*., at 348 (quoting *Graham*, supra). Sanford's actions were objectively reasonable. Plaintiff's allegation that he was thrown onto his head ignores the sources of his wounds, from his efforts to break free of his home to his struggle on the ground during arrest.

In response to Defendants' valid observation that Plaintiff's use of force allegations are nothing more than conclusory statements and recitations of the elements of the claim, Plaintiff doubles down on his insufficient allegations, essentially asking the Court to look past plausibility, ignore the dispatch calls and police reports, and imagine instead that the "the entire reason [the officers] were called" (ECF #16, p.4:25-26) was because of a call for medical aid for

---

[2] Since qualified immunity concerns of the reasonableness of an individual's actions, it can only apply to persons. *Graham v. Connor*, 490 U.S. 386 (1989).

an epileptic event. Such allegations are not plausible in light of the factual content of the exhibits to the Motion to Dismiss (ECF #10), in which it is clear the officers were responding because Plaintiff was violent and uncooperative.

 b. **Unlawful Seizure.**

A necessary element of an unlawful seizure claim is lack of probable cause. *Lacy v. County of Maricopa*, 631 F. Supp. 2d 1183, 1193 (2008). When the facts and circumstances known to the officer from reasonably trustworthy information is sufficient to warrant a belief that the Plaintiff had committed is or is committing an offense, probable cause to arrest exists. *Id*., at 1194. The Reno Justice Court's finding of probable cause is properly considered, but even if it is not, the reasonably trustworthy information known to the officers was sufficient for probable cause. The officers were responding to a call of a naked, violent and uncooperative man, and they encountered just such a person, who displayed hostility toward them and intentionally attempted to flee from them. Plaintiff's allegations are devoid of factual, let alone plausible, content to shoe the officers had "knowledge" Plaintiff's behavior was supposedly caused by a medical condition. (The fact that Plaintiff refers to "Estes" in paragraph 53 of the Complaint is a further indication that Plaintiff's allegations are cut-and-paste recitations of elements and conclusory statements, rather than factual assertions.)

 c. **Violation of Due Process.**

Plaintiff wisely abandoned the essence of his due process violation claim - that he "believes" a Renown doctor discussed Plaintiff's epilepsy with the officers – because the allegation was insufficient to support his claim. A "belief" is less than a plausible factual assertion necessary to state a cognizable claim. Moreover, it stretches the boundaries of plausibility even more to assert that any medical provider would, in the course of emergency treatment, specifically tell a police officer the patient is not guilty of a set of crimes based on a medical condition – and then release that patient to be booked in jail.

By abandoning the knowledge aspect of his due process claim, the substantive allegations supporting that claim, paragraphs 58 and 59 of the Complaint, are eliminated. Thus, Plaintiff must rely on his assertion that, "Sanford and Leavitt chose to leave out of their reports the fact that the reason they were called . . . was because O'Doan has epilepsy and had suffered a seizure." (ECF #16, p.18:14-16). However, the exhibits to the Motion to Dismiss clearly demonstrate the officers were called, *after* emergency medical providers, because Plaintiff was *violent and uncooperative*. Given such a radically incorrect, and judicially noticeable, factual error, Plaintiff fails to state a plausible due process claim.

**3.   Plaintiff's Assault and Battery Claim Is Subject to the Same Shortcomings as his Excessive Force Claim.**

Plaintiff acknowledges (1) law enforcement officers may use reasonably necessary force, and (2) alleged battery is judged by the same standard as a §1983 claim. (ECF #16, ¶32). As noted herein, and in the Motion to Dismiss (ECF #10), Sanford's actions were objectively reasonable. Thus, Plaintiff's assault and battery claims are subject to dismissal.

**4.   Plaintiff does not Allege Cognizable False Arrest and False Imprisonment Claims.**

A law enforcement officer is not liable for false arrest or false imprisonment when probable cause exists for an arrest. *Garton v. City of Reno*, 102 Nev. 313, 314-315, 720 P.2d 1227, 1229 (Nev. 1986); *Nelson v. City of Las Vegas*, 99 Nev. 548, 552, 665 P.2d 1141, 1143-44 (1983). Sanford and Leavitt had probable cause to arrest Plaintiff, noted above. Plaintiff's argument that the officers had "knowledge" of exculpatory evidence (alleged epilepsy and seizure) is also addressed above.   Allegations that a medical provider would, in the course of emergency treatment, specifically tell a police officer the patient is not guilty of a set of crimes based on a medical condition – and then release that patient to be booked in jail – do not pass the plausibility test.

///

///

## CONCLUSION

Plaintiff's entire lawsuit is based on a factually faulty premise, that the officers were called to render aid to an epileptic. The record properly before the Court demonstrates that Sanford and Leavitt were called to respond to a violent and uncooperative man, that they encountered such a person, and their actions were objectively reasonable under the circumstances. Plaintiff's Complaint and causes of action rely on implausible conjecture which does support cognizable or plausible claims. Plaintiff's Complaint defies common sense, and thus cannot withstand Rule 12(b)(6) scrutiny.[3] Therefore, Defendants respectfully request that Plaintiff's Complaint be dismissed with prejudice in its entirety.

DATED this 15th day of May, 2017.

KARL HALL
Reno City Attorney

By: /s/ Mark A. Hughs
MARK A. HUGHS
Deputy City Attorney
Nevada Bar #5375
Post Office Box 1900
Reno, Nevada  89505
(775) 334-2050

*Attorneys for City of Reno
Officer Joshua Sanford, and
Officer Cade Leavitt*

---

[3] *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify that I am an employee of the RENO CITY ATTORNEY'S OFFICE, and that on this date, I am serving the foregoing document(s) on the party(s) set forth below by:

　　_____　　Placing an original or true copy thereof in a sealed envelope placed for collection and mailing in the United States Mail, at Reno, Nevada, postage prepaid, following ordinary business practices.

　　_____　　Personal delivery.

　　  X   　　CM/ECF electronic service

　　_____　　Facsimile (FAX).

　　_____　　Federal Express or other overnight delivery.

　　_____　　Reno/Carson Messenger Service.

addressed as follows:

　　Luke Busby, Esq.
　　216 East Liberty Street
　　Reno, NV 89501

　　DATED this   15th   day of June, 2017.

　　　　　　　　　　　　　　　　　　/s/ Christine Felch
　　　　　　　　　　　　　　　　　　Christine Felch, Legal Assistant